
FILED IN THE
UNITED STATES
BANKRUPTCY COURT

2013 JUN -7 A 9:06

DISTRICT OF UTAH
MAIL

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>KATIE LYNN BIRCHARD,<br><br>Debtor,<br><br>*********************************<br><br>Tracy R. Terhune,<br><br>    Plaintiff.<br><br>    v.<br><br>Katie Lynn Birchard,<br><br>    Defendant | CASE NO.: 12-30265-WTT<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT TO DETERMINE DISCHARGEABILITY OF DEBT**<br><br>(Chapter 7)<br><br><br><br>Adversary Proceeding No. 12-02552 |

In accordance with Rule 7056 of the Federal Rules of Bankruptcy Procedure and Rule 56 of the Federal Rules of Civil Procedure, plaintiff respectfully moves the Court for summary judgment, or, alternatively, summary adjudication of issues, against Defendant Katie Lynn Birchard.

- 1 -

## I. SUMMARY OF ARGUMENT

Plaintiff Tracy R. Terhune ("Plaintiff) seeks, via this adversary proceeding, to characterize the debt owed him by Defendant Katie Lynn Birchard as non-dischargeable, pursuant to 11 U.S.C. § 523(a)(6). The debt at issue arises from a California state court judgment Plaintiff obtained against Katie Lynn Birchard. The default judgment includes awards for, among other things, defamation and intentional infliction of emotional distress. Plaintiff argues, in light of the undisputed facts, there are no genuine issues as to any material fact in the adversary proceeding and, therefore, Plaintiff should be granted summary judgment.

Plaintiff alternatively and further asserts that the default judgment necessarily decided that the debt was incurred by willfully and maliciously injuring Plaintiff. Plaintiff further argues that, under the doctrine of issue preclusion, the California state court decision bars Katie Lynn Birchard from re-litigating the issue of whether her actions towards Plaintiff were willful and malicious. Therefore, based on the court decision, there are no genuine issues as to any material fact in the adversary proceeding and the Plaintiff should therefore be granted summary judgment on this basis.

## II. STATEMENT OF MATERIAL UNDISPUTED FACTS

Plaintiff is an author on silent films pertaining to the silent film actor Rudolph Valentino and has published a book in 2004 entitled "Valentino Forever" and in 2006, re-published a book entitled "Valentino the Unforgotten". (Tracy R. Terhune Declaration ¶ 2). In or around October of 2009, Defendant owned and/or operated several internet websites. (Terhune Declaration ¶ 3; See also Defendant's Answer to Plaintiff's Complaint to Determine Dischargeability of Debt ¶ 7, attached as Exhibit 1 to Terhune Declaration). In or around October of 2009, Defendant began publishing derogatory statements and accusations about Plaintiff on her websites, depicting him as mentally ill, sinister, insane and fraudulent, even though Defendant had never personally met

Plaintiff. (Terhune Declaration ¶ 4; See also Transcript of the Civil Harassment Proceedings conducted in Defendant's Civil Harassment claim against Plaintiff, attached to Terhune Declaration as Exhibit 2, page 2). The false and defamatory statements communicated by Defendant were published and disseminated on the world-wide web. (Terhune Declaration ¶ 5). At times, Defendant used the alias name "Hala Pickford" to publish her statements. (Terhune Declaration ¶ 5).

Among the dozens of other false and defamatory statements, the Defendant published the following false and defamatory statements on the blogs and websites that she admittedly owns and controls:

1) "No links to Donna Hill or the King of Kooky aka Tracy Terhune [Plaintiff]. The dynamic duo have used illegal means in the past and we want no part of it. They have a history of bullying and ripping off fans, and that will just not fly here."(Terhune Declaration ¶ 6)

2) Defendant also falsely claimed that Plaintiff started harassing her family "telling people to send them bombs or something to explode in the mail" and that Plaintiff said that the Defendant needs to be "done away with", even though the Plaintiff has never made such remarks or threats. (Terhune Declaration ¶ 12).

3) "Tracy Terhune [Plaintiff] is obsessed with Rudy's death, he profits off of it, he's insane, vindictive, and childish." (Terhune Declaration ¶ 7).

4) "The Valentino Mafia (Tracy Terhune, Bob Birchard, and Stella Grace) have also harassed their fair share of people before…but those people are too terrified of another occurrence and have sworn me to secrecy on it." (Terhune Declaration ¶ 12).

5) Defendant repetitively referred to Plaintiff using the derogatory title of "King Kooky" (Civil Harassment Proceedings, pp. 18 and 24 –Exhibit 2) and published numerous

false allegations about his sanity and/or mental well-being. For example, Defendant published a post on one of her websites, via the World Wide Web, stating "…But King Kooky and self-proclaimed Valentino 'authority' Tracy Terhune [Plaintiff] is at it again, and it just needs to end. You guys would not believe how dangerous and looney someone [Plaintiff] like this is…" (Terhune Declaration ¶ 8).

6) Defendant also claimed that Plaintiff was "cracked out" on drugs. (Terhune Declaration ¶ 19).

7) Defendant has fabricated stories, and claimed that Plaintiff stalks and publicly harasses her, for example she posted that: "I refuse to publicly get into a pissing match with those types anymore; no matter how dangerous or off kilter they [Plaintiff] are (including stalking me to public events where they [Plaintiff] know I am." (Terhune Declaration ¶ 9).

8) Defendant also posted, when referring to David Bret and Plaintiff Tracy Terhune, "yes…they've sent me the death threats and harassed me." Even though Plaintiff has never done such a thing. (Terhune Declaration ¶ 11).

9) Defendant further falsely posted that "Terhune had David Bret send me death threats so I would miss the case and lose." (Terhune Declaration ¶ 11).

10) Despite never having met the Plaintiff when Defendant was publishing the statements, Defendant admitted that her issues with Mr. Terhune, are personal, for example, she once posted that "Tracy, King Kooky, its already personal". (Terhune Declaration ¶ 18).

11) Defendant also falsely claimed she had obtained a restraining order against Plaintiff, even though that is not true "Despite my attempts to get anyone to listen to me that Tracy Terhune was violating his restraining order…no one would listen to me. And

- 4 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I'm mad as hell about it." (Terhune Declaration ¶ 13)

12) Defendant further falsely claimed that Plaintiff sabotaged a film festival she arranged. For example she posted that "I [Defendant] was working hard to make The Rudolph Valentino Film Festival come true and it appeared it would: I had a theatre and a sponsor. Terhune and his cronies took that away…" (See Email from Ms. Gerber attached to Terhune Declaration as Exhibit 9, where she unequivocally states that Plaintiff had nothing to do with Defendant's failure to organize the event, as a matter of fact Ms. Gerber indicates that it was Defendant's inability to raise funds that caused the cancellation, and also see Terhune Declaration ¶ 15).

Defendant also contacted relatives of Mr. Terhune's friend, Jeanine Villalobos, to "warn them about" and defame him. Jeanine wrote to Mr. Terhune in an e-mail message that Hala Pickford "contacted my Aunt Sylvia to warn her about you (!), among other things…" (See Email from Ms. Villalobos attached to Terhune Declaration as Exhibit 10).

The true facts are that Plaintiff is not mentally ill or unstable, he does not have any criminal history or record and he has never engaged in any fraudulent activities whatsoever. (Terhune Declaration ¶¶ 20-22).

Instead of heading Plaintiff's repeated pleas that she remove the false and defamatory statements, Defendant chose to instead mock him. For example, she posted: "He's [Plaintiff] not gonna blackmail or harass me and get away with it just so he can try and keep his fake halo atop his head. Why does he [Plaintiff] want this stuff down? Because it warns people about what a whacked out asshole he [Plaintiff] is." (Terhune Declaration ¶ 18).

Attached to Terhune Declaration as Exhibit 3 are copies of screen shots of most of the derogatory statements and accusations posted by Defendant against Plaintiff on Defendant's

- 5 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

various web sites. However, not all of Defendant's web sites are now currently operational.

After being finally fed up with Defendant's behavior, Plaintiff had no recourse but to hire an attorney and file a Civil Complaint for Damages and Injunctive and Declaratory Relief on March 19, 2010, alleging, among other things, defamation and intentional infliction of emotional distress. [See Complaint filed by Plaintiff against Defendant in the Los Angeles Superior Court (LASC) attached to Terhune Declaration as Exhibit 4].

In the defamation cause of action, Plaintiff specifically alleged that the statements made by Defendant and published on the World Wide Web are libelous and defamatory on their face in that the statements maliciously and recklessly portray Plaintiff in a negative light, as being mentally insane, dangerous, and participating in illegal and/or fraudulent activity. (See LASC Complaint ¶ 38 – Exhibit 4). Plaintiff further alleged that the statements clearly expose Plaintiff to hatred, contempt, ridicule and obloquy and/or caused Plaintiff to be shunned or avoided and have a tendency to injure Plaintiff in his personal life, occupation and career and that this was done by Defendant intentionally knowing that the depiction was false, or without any reasonable ground for believing it to be true. (See LASC Complaint ¶ 39 – Exhibit 4).

Plaintiff further alleged the statements were unprivileged and were intended by Defendant to directly injury Plaintiff with respect to his personal and professional reputation, character, trade and business, including Plaintiff as an author and authority with regard to the silent film star Rudolph Valentino. (See LASC Complaint ¶ 40 – Exhibit 4). Plaintiff alleged Defendant knew, or recklessly disregarded the fact that the statements were likely to damage the reputation, standing and career of Plaintiff and caused damage to his standing in the community and in the professional industry. (See LASC Complaint ¶ 40 – Exhibit 4). Plaintiff further alleged the statements were made with actual malice (See LASC Complaint ¶ 41 – Exhibit 4).

Regarding the intentional infliction of emotional distress cause of action, Plaintiff alleged

- 6 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

that the false, defamatory stories and statements made by Defendant about Plaintiff are false, deceitful, dishonest and fraudulent and were so extreme and outrageous that it exceeded all bounds of what is usually tolerated in a civilized society. (See LASC Complaint ¶ 60 – Exhibit 4). Plaintiff further alleged the acts of Defendant were not privileged, but were malicious and wrong and has caused Plaintiff to suffer humiliation, mental anguish and emotional distress.

After hearing Plaintiff's testimony and considering other evidence, a Default Judgment was entered against Defendant in the Los Angeles Superior Court on September 17, 2010 (See Default Judgment attached to Terhune Declaration as Exhibit 5). The Entered Judgment ordered the Defendant to "remove all defamatory statements regarding Plaintiff, and not to publish any new ones in the future." (See Default Judgment - Exhibit 5).

The Entered Judgment also ordered Defendant to pay Plaintiff, One-Hundred-Thousand-and-Five-Hundred-Twenty-Six-Dollars-and-Fifty-Five-Cents ($100,526.55) for damages and costs. (See Default Judgment - Exhibit 5). The Abstract Of Judgment filed by Plaintiff against Defendant is attached to Terhune Declaration as Exhibit 6 and the Writ of Execution filed by Plaintiff against Defendant is attached to Terhune Declaration as Exhibit 7.

Despite more than two-years having passed by, Defendant has not yet complied with any of the terms of the Entered Judgment, nor has she appeared for her Order to Show Cause Hearing re Contempt. Therefore, as confirmed in Defendant's own bankruptcy petition documents, a currently outstanding Bench Warrant was issued on July 25, 2011 against Defendant for failing to appear for her Order to Show Cause regarding Contempt of the court's Entered Judgment. (See Bench Warrant attached to Terhune Declaration as Exhibit 8). Worse yet, instead of abiding by the terms of the Entered Judgment, the Defendant openly mocked and disobeyed them. For example, on January 29, 2012 the Defendant posted the following entry on a United Kingdom based blog:

- 7 -
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

*"If Terhune or his ilk come threatening suits [sic] and waiving legal notices, this forum is hosted in the UK, where they do not apply. He can say what he likes, the owner has no legal obligation to do, pardon me, SHIT."*

III. ARGUMENT

A. STANDARD FOR RESOLVING SUMMARY JUDGMENT MOTIONS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

Once the moving party has carried its burden, rule 56(c) "requires the nonmoving party to go beyond the pleadings and by...affidavit, or by the 'depositions, answers to interrogatories and admission on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *See also Gonzales v. Millers Casualty Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir. 1991). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby Inc*, 477 U.S. 242, 247-248 (1986).

//

//

B. KATIE LYNN BIRCHARD WILLFULY AND MALICIOUSLY INJURED

PLAINTIFF, MAKING THIS DEBT NON-DISCHARGEABLE

The Bankruptcy Code provides: "A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt...(6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under Rule 4005 of the Federal Rules of Bankruptcy Procedure, the Plaintiff has the burden of proof in objecting to the discharge. The standard is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). In the Tenth Circuit, objections to discharge require the moving party to prove that the injury was both "willful" and "malicious". *Mitsubishi Motors Credit of America, Inc. v. Longley*, 235 B.R. 651, 655 (10th Cir. BAP 1999).

1. Willful Injury

A "willful injury" is an intentional or deliberate injury, not merely a deliberate, intentional, or reckless act that led to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). It is not enough that the act itself was intentional. *Id.* Rather, the act must have been carried out with the actual intent to cause injury. *Id.* The court clarified that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless acts." *Id.*

In the present case, Defendant's actions in publishing false information regarding the character of Plaintiff, including falsely indicating that Plaintiff is crazy, engages in illegal activity, is a drug user and a threat to society were done willfully. Defendant made these statements with the actual intent to cause injury. Defendant is a competitor in that she also publishes information regarding silent films, and particularly regarding Rudolph Valentino. Defendant's conduct is believed to have been undertaken in an attempt for personal gain, to promote herself as an authority on Rudolph Valentino, and to bring awareness to her book and her web site. Falsely indicating that a person such as Plaintiff is crazy, a threat to society, a drug user

- 9 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

and engages in illegal activity can only be done with an intent to damage the reputation, standing and career of Plaintiff and to interfere with Plaintiff's current and prospective clients, fan base, publishers and professional associations for Defendant's ultimate benefit.

Even if there were a question of whether Defendant intended the consequences of her actions, Defendant continued to publish false statements regarding Plaintiff even after Defendant was requested by Plaintiff to stop publishing the false information. Although Defendant initially agreed to remove the false information, instead, Defendant intentionally continued to publish the defamatory statements and created further fabricated stories about Plaintiff on Defendant's web site, knowing and intending the negative effects on Plaintiff's reputation and standing in the community.

Defendant's intent is also clear from her comments. Defendant openly admitted to having a personal issue with Plaintiff despite having never met him, when Defendant posted on one of her web sites "Tracy [Plaintiff], King Kooky, its already personal." The injury caused by Defendant is therefore a willful injury as defined by the United States Supreme Court in *Kawaauhau v. Geiger*, 523 U.S.57.

    2. Malicious Injury

In defining "willful and malicious injury", bankruptcy courts in the Tenth Circuit have articulated the "malicious" component under 11 U.S.C. § 523(a)(6) as requiring the willful act to be performed without justification or excuse. *America First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr.D.Utah 1999) ("in order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious)." *Dorr, Bentley &Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524 (10th Cir. 1993) ("we believe the rule fully supported by our cases is that 'willful and malicious injury' occurs when the debtor, without justification or excuse, and with full knowledge of the

specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury. Such a standard is consistent with our rule that § 523(a)(6) requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury).

In the present case, Defendants actions were performed without justification or excuse. As indicated in the Statement of Material Undisputed Facts, the Defendant did not know Plaintiff personally. The Defendant had no knowledge of Plaintiff's mental status. The Defendant had no knowledge of whether Plaintiff took drugs. The Defendant had no knowledge of whether Plaintiff was a danger to society or had any criminal convictions. On the contrary, Plaintiff has no criminal record or history, is not mentally ill or unstable, is not a drug user and has not engaged in any fraudulent activities whatsoever.

Moreover, Plaintiff had never interacted with Defendant prior to the malicious, wrongful, defamatory comments were posted on the World Wide Web. As there was no justification or excuse for Defendant performing the wrongful acts indicated in the Complaint, Defendant's actions were malicious.

### C. KATIE LYNN BIRCHARD IS PRECLUDED FROM RELITIGATION THIS ISSUE (ISSUE PRECLUSION) AS A STATE COURT JUDGMENT HAS ALREADY BEEN ISSUED

An issue previously decided in a judicial proceeding is barred from re-litigation. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980). This rule of issue preclusion is applicable to bankruptcy dischargeability adversary proceedings, barring re-litigation. See *Grogan, supra*, 498 U.S. at 284. Full faith and credit mandates that federal courts apply forum state law when determining whether a state court judgment should be given preclusive effect. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982). *Bugna v. McAruterh (In re Bugna)*, 33

- 11 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

F.3d 1054, 1057 (9th Cir. 1994) (determining the dischargeability of a debt by applying California law of issue preclusion).

Issue preclusion under California law requires the following elements:

"(1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) The issue must have been actually litigated in the former proceeding; (3) It must have been necessarily decided in the former proceeding; (4) The decision in the former proceeding must be final and on the merits; and (5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

*Younie v. Gona (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997), *aff'd*, 163 F.3d. 609 (9th Cir. 1998); See also *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996).

Collateral estoppel applies to a default judgment to the extent that the defendant had actual notice of the proceedings and a full and fair opportunity to litigate. *In re Harmon*, 250 F.3d 1240, 1247 n.6 (9th Cir. 2001). In the context of a default judgment, a decision has preclusive effect in later proceedings "only where the record shows an express finding upon the allegation" for which preclusion is sought. *Williams v. Williams (In re Williams' Estate)*, 36 Cal.2d 289, 297 (1950). However, "the express finding requirement can be waived if the court in the prior proceeding necessarily decided the issue." *In re Harmon*, 250 F.3d at 1248. In such a circumstance, an express finding is not required because "if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Id.*

Moreover, by permitting a default judgment, the Defendant is considered to have "confessed the truth of all the material allegations in the complaint." *Fitzgerald v. Herzer*, 78 Cal.App.2d 127, 131 (Court of Appeals 1947). A default judgment is "as conclusive as to the

- 12 -
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

issues tendered by the complaint as if it had been rendered after answer filed and trial had on allegations denied by the answer." *Id.* at 131-132.

In the present case, a default judgment was obtained against Defendant relating to various causes of action, including intentional infliction of emotional distress and defamation. Defendant had actual notice of the proceedings, as she was served with the Summons and Complaint (See Proof of Service of Summons). Therefore, Defendant had a full and fair opportunity to litigate the case. By permitting a default judgment, Defendant has confessed the truth of all material allegations in the complaint. The willful and malicious nature of Defendant's actions have been alleged throughout the LASC Complaint (*See, e.g.*, LASC Complaint ¶ 29). The issue of whether Defendant's actions were willful and malicious were necessarily decided and therefore actually litigated.

### D. CONCLUSION

For the above-referenced reasons, as there is not genuine issue as to any material fact, Plaintiff respectfully submits that he is entitled to summary judgment.

Date: 6/6/13

Plaintiff, Tracy R. Terhune
11230 Peachgrove Street, #209
North Hollywood, California 91601
(818) 777-6622